<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., | Civ. No. 05-898(DRD) |
| Plaintiff, | |
| v. | **O P I N I O N** |
| MERIX PHARMACEUTICAL CORP., | |
| Defendant. | |

Robert J. Del Tufo, Esq.
Kenneth A. Plevan, Esq.
SKADDEN ARPS SLATE
MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
    Attorneys for Plaintiff GlaxoSmithKline
    Consumer Healthcare, L.P.

James S. Richter, Esq.
WINSTON & STRAWN LLP
The Legal Center
One Riverfront Plaza, 7th Floor
Newark, New Jersey 07102
    Attorneys for Defendant Merix Pharmaceutical Corp.

<u>OF COUNSEL</u>
Kimball R. Anderson, Esq.
Stephen P. Durchslag, Esq.
Ronald Y. Rothstein, Esq.
WINSTON & STRAWN, LLP
35 W. Wacker Drive
Chicago, IL 60601

**Debevoise, Senior District Judge**

## I. Background

On September 13, 2005 the court issued a preliminary injunction which, among other, enjoined defendant, Merix Pharmaceutical Corp. ("Merix") from making certain claims about its cold sore remedy Releev. On November 2, 2005 the court granted the motion of plaintiff, GlaxoSmithKline Consumer Healthcare, L.P. ("GSK") to find Merix in contempt of the September 13, 2005 order. The action giving rise to that motion was Merix's use in its advertising of the claim "one-day cold sore treatment." During the course of the hearing on the contempt motion the court suggested that use of the phrase "one-day cold sore symptom treatment" would not violate the September 13 order.

GSK filed a new motion to hold Merix in contempt, charging the following asserted violations of the September order:

1. A radio ad for Releev which aired in Boston on October 27, 2005 made the claim of "one-day cold sore treatment."

2. Merix failed to recall the Releev sales manual that was distributed to its independent sales force on June 30, 2005, shortly after the conclusion of the preliminary injunction hearing. These manuals contain a number of the representations and materials that are violative of the preliminary injunction. Yet they were left in the hands of dealers until nearly two weeks after the October 6, 2005 contempt hearing. Further Merix has not informed its sales force that three key Releev advertising claims had been enjoined by the court and that the salesmen should not use them in making their oral presentations, i.e., i) Releev heals cold sores within or in less than a

day; ii) clinical tests have proven the efficacy of Releev; and iii) use of before and after photos.

3. Merix failed to recall one or more Releev sell sheets and to tell its sales force to discontinue their use until October 19. The sell sheets included references to "1-Day Cold Sore Treatment" and before and after photographs.

4. A Releev radio ad that aired on November 18, 2005 on WWJ-AM Detroit made the claim "one-day treatment for cold sores and fever blisters." This ad ran at least twice in two weeks.

5. A Releev radio ad that aired on November 25, 2005 on WWJ-AM in Detroit made the following enjoined claims: i) "one-day treatment for cold sores," ii) that "clinical testing" supports the efficacy of Releev; iii) consumer testimonials; and iv) "Three days later it [the cold sore] was gone." This ad had run at least four times in one week.

Subsequent monitoring on GSK's behalf disclosed additional use of the phrase "one-day cold sore treatment."

In response to GSK's charges, Merix described its efforts after the September order and after the November contempt order to ensure compliance with the preliminary injunction. Within hours after the October 6, 2005 hearing on GSK's first contempt motion Merix revised all of its radio ads so that all references to "one-day cold sore treatment" were changed to "one-day cold sore symptom treatment." The next day, October 7, Merix sent the revised ads to CTV Media, the company Merix uses to distribute its ads to radio stations. Merix also instructed the radio stations to destroy the old ads. Brenda A. Bowman, a vice president of CTV Media, confirmed that the non-compliant ads that GSK cites were not new ads recently placed by Merix; rather they were ads created under a contract dated March 1, 2005 covering ads that ran from

March 7, 2005 to July 3, 2005; Ms. Bowman stated that "[t]he running of those ads after contract number 19527 expired (on July 3, 2005) was unauthorized and could only have resulted from an error by the station. In my experience such errors at radio stations and other media outlets are infrequent, but they are inevitable." (Bowman Aff. para 9).

According to Ms. Bowman Merix's ads are run by approximately 1,500 stations affiliated with Westwood One radio network. She estimated that for the period of September 12, 2005 through December 1, 2005 Merix radio ads ran on a total of 36,319 occasions. Both Merix and GSK have advanced error rates, neither of which are supported by a convincing statistical analysis. It is apparent that Merix has made conscientious efforts to conform its ads to the requirements of the preliminary injunction but that in some instances, probably relatively few, the radio stations have used old ads which are violative of the preliminary injunction.

The offending sales manual was, according to Ms. Squires, Merix's Chief Executive Officer, distributed to Merix's sales brokers on or about June 30, 2005. It discusses selling strategies for brokers and was not designed to be given to retailers or customers. The representations contained in these manuals, some of which violated the subsequently issued preliminary injunction, were undoubtedly communicated orally by the sales brokers to retailers and customers.

According to Ms. Squires, the main selling season for Releev is March through August of each year, as retailers generally make their purchasing decisions during that period in preparation for the subsequent cold and flu season. Merix uses a national broker known as National Sales Solutions ("NSS") which in turn works with independent sales brokers throughout the country. Ms. Squires asserts "[a]fter making inquiries through NSS, I have determined that the sales

4

manual at issue was not used in any presentations by brokers to customers after September 13. Also after interviewing Merix's internal staff (three people plus myself), I have determined that no one at Merix used this sales manual at issue after September 13. . . . Furthermore, hours after the October 6 hearing, as an added precaution, I telephoned Ron Otto, the President of NSS, and instructed him to advise all NSS managers and independent sales brokers that they should not use any Releev sales material of any kind . . . . In addition, on October 19, I confirmed that instruction with specific respect to the June 30 sales manual" (Squires Aff. para 9, 10).

GSK characterizes all this as too little and too late. It further criticizes Merix for failing to advise NSS and the independent sales brokers of the claims about Releev which it is specifically ordered not to make.

As for the sell sheets Merix issues two kinds: i) Releev Single use and ii) Releev 6 ml., each created prior to the September preliminary injunction. On July 16, 2005 approximately 20 of the Releev Single Use were distributed at a trade show. They have not been used since. On September 12, 2005 (the day before the issuance of the preliminary injunction) Merix made its last distribution of a sell sheet for Releev 6 ml. - sending twenty copies to a sales broker. According to Ms. Squires, "the broker did not use the sell sheet in any sales presentations to consumers or retailers after September 13. I am informed that the broker simply kept the sales sheet in its office." (Squires Aff. para 13).

Merix contends that because the cold sore remedy purchasing season was March through August of each year, there was no reason to believe that sales representatives would use the sales manuals or sell sheets after that period, which would be when the preliminary injunction would have gone into effect.

5

## II. Discussion

Merix's initial casual approach to ensuring that the September 13, 2005 preliminary injunction was fully complied with bordered on contempt. There was a failure to take steps to verify that all the radio stations running Releev ads complied with the direction to discontinuance the old ads; there was a failure to impress upon CTV Media (and through it the radio stations) and upon NSS (and through it the independent sales brokers) that the direction to discontinue use of old radio ads and representations in the sales manuals and sell sheets was made in order secure compliance with a court order that prohibited certain claims about Releev.

However, it is evident that Merix is taking significant steps to comply with the injunction and in view of the many thousands of Releev radio ads that appeared, the number of non-complying ads appears to be de minimus. It would seem that they resulted from the failure of the radio stations to obey instructions not to use them. The sales manuals and the sell sheets were few in number, and there is no evidence that they were used after issuance of the September 13 order.

In these circumstances rather than issue a formal finding of contempt, the better course is to supplement the September 13, 2005 order to impose additional requirements upon the parties to ensure compliance with that order.

The additional requirements will be: i) should GSK in the future learn of any Merix radio ad or other form of claim about Releev which GSK considers to be in violation of the September 13, 2005 order, GSK's counsel instead of writing to the court or filing a motion shall confer with Merix's counsel and seek to resolve the problem; only if a resolution of the problem cannot be achieved may GSK file a motion; ii) upon being advised of a non-conforming radio ad, Merix

shall forthwith communicate with CTV Media and the radio station airing the ad advising them that the ad was violative of a court order in a specified respect and that it must not be aired again; iii) to the extent that it has not already done so, Merix shall communicate either directly or through NSS with each entity to which it distributed sales manuals or sell sheets after March 1, 2005 and request the return or destruction of any sales manuals or sell sheets still in the hands of such entity; and iv) Merix shall in writing either directly or through NSS advise any entity to which it distributed sales manuals or sell sheets after March 1, 2005 that by virtue of a court order Merix and those acting on its behalf are forbidden to make the claim for Releev that i) it heals or treats cold sores within or in less than one day or ii) that clinical, laboratory or other tests have established or support the efficacy of Releev.

      No attorneys' fees shall be awarded.  The court will enter its own order.

December 19, 2005              /s/ Dickinson R Debevoise
                                                           DICKINSON R. DEBEVOISE
                                                               U.S.S.D.J.